IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-02133-REB-KLM

MAGIC CARPET SKI LIFTS, INC., a Colorado corporation,

      Plaintiff,

v.

S&A CO., LTD, a Korean corporation,

      Defendant.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

      This matter is before the Court on Plaintiff's **Motion for Entry of Default Judgment** [#12][1] (the "Motion"). Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C.Colo.LCivR 72.1(c), the Motion has been referred to the undersigned for a recommendation regarding disposition [#6]. In the Motion, Plaintiff asks the Court to enter default judgment against Defendant pursuant to Fed. R. Civ. P. 55(b)(2). *Motion* [#12] at 2. Defendant has not responded to the Motion. The Court has reviewed the pleadings, the entire case file, and the applicable law, and is sufficiently advised in the premises.[2] For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion [#12] be **GRANTED in part**

---

[1] "[#12]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's electronic case filing and management system (CM/ECF). This convention is used throughout the Recommendation.

[2] As an initial matter, the Motion does not comply with D.C.COLO.LCivR 10.1(e) which states that "[a]ll pleadings and documents shall be double spaced." The Motion is subject to denial on this basis alone. Nevertheless, in the interest of expedience, the Court will consider the merits of the Motion.

and **DENIED in part.**

## I. Background

Plaintiff is a Colorado corporation with its principal place of business in Colorado.[3] *Compl.* [#1] ¶ 1. Defendant is a Korean corporation, organized and existing under the laws of South Korea, with its principal place of business in Ansan City, South Korea. *Id.* at ¶ 2.

Plaintiff alleges that on May 15, 2013, Defendant entered into a Purchase Agreement with Plaintiff. *Id.* at ¶ 7. Plaintiff attached the Purchase Agreement to the Complaint. *Compl., Ex. 1* [#1-1] (the "Agreement"). Pursuant to the terms of the Agreement, Defendant agreed to purchase two ski lift conveyor systems for a purchase price of $112,640.00. *Compl.* [#1] ¶ 7; *see also Agreement* [#1-1] at 2. Plaintiff alleges that it delivered both ski lift conveyor systems to Defendant. *Id.* at ¶ 8.

The Agreement required Defendant to pay the $112,640.00 in two installments of $56,320.00, with the last payment to be made no later than September 15, 2013. *Agreement* [#1-1] at 2. It contains a provision requiring interest on past due sums in the amount of 18% annually, and also grants the prevailing party attorneys' fees and court costs in the event that litigation arises from collection of payment. *Id.*

Plaintiff alleges that despite demands for payment, Defendant has not paid Plaintiff $112,640.00 as required by the Agreement. *Compl.* [#1] ¶ 9. As a result, Plaintiff

---

[3] When considering a motion for default judgment, assuming default was properly entered, the moving party enjoys the benefit of deferential pleading interpretation. *See Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1125 (10th Cir. 2003). As a result, the Court deems the well-pled facts of the complaint to be true. *Vibe Tech., LLC v. Suddath*, No. 06-cv-00812, 2009 WL 2055186, at *1 (D. Colo. July 10, 2009) (citing *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983)). Undisputed facts set forth by the moving parties in affidavits and exhibits are also accepted as true. *Id.*

commenced this action on July 31, 2014.  *See Id.* at 3.  Defendant was served on October 1, 2014 in Ansan City, South Korea via the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Convention").  *Motion* [#12] at 1.  Plaintiff has submitted a Certificate of Service from the South Korean Central Authority to the Court.  *Id.*; *see generally Notice of Service, Ex. 1* [#11-1].  Defendant has not filed a response or otherwise appeared.

On November 25, 2014, Plaintiff filed a Motion for Entry of Default Judgment.  *See id.*  The Clerk of Court entered default on November 26, 2014.  *See generally Entry of Default* [#13].

## II.  Analysis

Pursuant to Fed. R. Civ. P. 55, default may enter against parties who fail to appear or otherwise defend a lawsuit.  Here, entry of default was proper because Defendant failed to respond to Plaintiff's Complaint [#1].  Before proceeding with a default judgment, however, the Court must consider whether it has jurisdiction, whether the facts establish a legitimate basis for the entry of judgment, and whether the amount of damages can be ascertained.  *See Grady v. Swisher*, No. 11-cv-02880-WYD-KLM, 2014 WL 3562794, at *5 (D. Colo. July 18, 2014).  Accordingly, the Court's analysis addresses jurisdiction and whether there is a basis for entry of judgment.

## A.  Jurisdiction

In determining whether a default judgment is warranted, the Court must first consider whether it has jurisdiction over the subject matter and the parties against whom default judgment is sought.  *Dennis Garberg & Assocs., Inc., v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 772 (10th Cir. 1997); *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202-03 (10th Cir.

1986).  The Court must do so in consideration of the well-established rule that "a judgment is void if the court that enters it lacks jurisdiction over either the subject matter of the action or the parties to the action."  *United States v. 51 Pieces of Real Prop.*, 17 F.3d 1306, 1309 (10th Cir. 1994).

As noted above, undisputed facts from the Complaint and supporting affidavits are taken as true for purposes of analyzing this motion.

### 1.    Subject Matter Jurisdiction

Diversity jurisdiction is governed by 28 U.S.C. § 1332(a), which provides in pertinent part that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between– (1) citizens of different states; [or] (2) citizens of a State and citizens of a foreign state."  The Complaint alleges that Plaintiff is a Colorado corporation with its principal place of business in Colorado and that Defendant is a South Korean corporation, organized under South Korean law, with its principal place of business in South Korea. *Compl.* [#1] ¶¶ 1-2.  The damages sought by Plaintiff for Defendant's alleged breach of the Agreement total $112,640 in value.  *Id.* ¶ 7.  Plaintiff also seeks interest, attorneys' fees, and costs.  *Id.* ¶ 13.  Thus, the parties are diverse and the amount in controversy exceeds the statutory minimum.  Therefore, the Court may exercise subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332(a).

### 2.    Personal Jurisdiction

In addition to subject matter jurisdiction, entry of a default judgment in a civil case requires personal jurisdiction over the parties against whom judgment is sought.  *Bixler v. Foster*, 596 F.3d 751, 761 (10th Cir. 2010).  The Court must first address the adequacy of

4

service in deciding whether it has personal jurisdiction over Defendant. *See United States v. Elsberg*, No. 08-cv-00522-MSK-KLM, 2010 WL 5177439, at *2 (D. Colo. Aug. 17, 2010). Rule 4(f) of the Federal Rules of Civil Procedure governs service on individuals in a foreign country.  Fed. R. Civ. P. 4(f); *see Burda Media, Inc. v. Viertel*, 417 F.3d 292, 299 (2d Cir. 2005); *Marks v. Alfa Group*, 615 F.Supp.2d 375, 377 (E.D. Pa. 2009).  The rule also applies to foreign corporations not within any judicial district of the United States.  Fed. R. Civ. P. 4(h)(2).  The rule allows for service of process "by any internationally agreed means that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." Fed. R. Civ. P. 4(f)(1).  The Hague Convention is "intended to provide a simpler way to serve process abroad, to assure that defendants sued in foreign jurisdictions [ ] receive actual and timely notice of suit, and to facilitate proof of service abroad." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 466 U.S. 694, 698 (1988).  The Convention applies "where there is occasion" to transmit a judicial document for service abroad.  *Id.* at 702 (quoting Article 1 of the Hague Convention).  Compliance with the Hague Convention is mandatory in all cases to which it applies.  *Id.* at 705.

Plaintiff alleges that service was properly effected in compliance with the Hague Convention. *Motion* [#12] at 1.  Both the United States and South Korea are signatories to the Hague Convention. *Am. River Transp. Co. v. M/V BOW LION*, No. Civ.A. 03-1306, Civ.A. 03-1594, Civ.A. 03-1797, Civ.A. 03-1864, Civ.A. 03-2003, 2004 WL 764181, at *2 (E.D. La. Apr. 7, 2004).  On November 11, Plaintiff filed a Notice of Service with an attached Certificate of Service issued by the National Court Administration of the Republic of Korea, South Korea's Central Authority. *See generally Notice of Service, Ex. 1* [#11-1].

The Certificate of Service states that service was effected at a street address of "100-2 Tubingplace" on October 1, 2014.  *Id.*  The Central Authority's return of a completed Certificate of Service is "prima facie evidence that the Authority's service . . . was made in compliance with the Convention."  *Res. Trade Fin., Inc. V. PMI Alloys, LLC*, No. 99 Civ. 5156(DAB), 2002 WL 1836818, at *4 (S.D.N.Y. Aug. 12, 2002) (quoting *Northrup King Co. v. Compania Productora Semillas Algodoneras Selectas, S.A.*, 51 F.3d 1383, 1389 (8th Cir. 1995)).  Accordingly, the Court is satisfied that Plaintiff has properly served Defendant.

In continuing the analysis regarding personal jurisdiction, "[P]laintiff need only make a prima facie showing [of personal jurisdiction] if the motion [for default judgment] is decided only on the basis of the parties' affidavits and other written materials."  *Dennis Garberg & Assocs., Inc.*, 115 F.3d at 773.  The Court may only exercise personal jurisdiction over a non-resident defendant if: (1) the long-arm statute of Colorado permits personal jurisdiction in this case; and (2) the exercise of personal jurisdiction in Colorado comports with the Due Process Clause of the United States Constitution.  *Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1276 (10th Cir. 2005); *see also Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).  The Supreme Court of Colorado interprets Colorado's long-arm statute "to confer the maximum jurisdiction permitted by the due process clauses of the United States and Colorado constitutions."  *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005).  Because a due process analysis of jurisdiction in this case will also satisfy Colorado's long-arm statute, the Court need only consider whether the exercise of personal jurisdiction over Defendant is permitted by the Due Process Clause.  *SCC Commc'ns v. Anderson*, 195 F. Supp. 2d 1257, 1260 (D. Colo. 2002) ("[The] analysis turns on a single inquiry, whether the exercise

6

of personal jurisdiction over [the defendant] comports with due process."); *Dudnikov*, 514 F.3d at 1070 ("[T]he first, statutory, inquiry effectively collapses into the second, constitutional, analysis.").

The Due Process Clause requires that the Court conduct a two-step analysis of personal jurisdiction.  First, the Court must examine "whether the non-resident defendant has 'minimum contacts' with the forum state such that [it] should reasonably anticipate being haled into court there."  *TH Agric. & Nutrition, LLC v. Ace European Grp., Ltd.*, 488 F.3d 1282, 1287 (10th Cir. 2007) (citation omitted).  Second, if the defendant has sufficient minimum contacts, the Court then asks "whether the court's exercise of jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice,'" that is, whether the exercise of jurisdiction is "reasonable" under the circumstances.  *Id.*  (citation and certain quotation marks omitted).

### a.    Minimum Contacts

The "minimum contacts" requirement of due process may be met by showing the existence of general or of specific jurisdiction.  *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1532 (10th Cir. 1996).  The requisite minimum contacts exist if the non-resident defendant has continuous and systematic contacts with the forum state (general jurisdiction) or if the defendant (1) has purposefully directed activities at forum residents or otherwise acted to avail itself purposefully of the privilege of conducting activities there and (2) the litigation results from alleged injuries that arise out of or relate to those activities (specific jurisdiction).  *Impact Prods. Inc. v. Impact Prods., LLC*, 341 F. Supp. 2d 1186, 1190 (D. Colo. 2004).  In short, Defendant must have purposely established minimum contacts with the forum state such that it "should reasonably

anticipate being haled into court" there.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).

To determine whether the Court has specific jurisdiction over Defendant, the Court must examine whether: (1) Defendant purposefully directed its activities at Colorado or its residents or acted in some other way by which it purposefully availed itself of the benefits and protections of conducting business in Colorado, and (2) Plaintiff's claims arise out of or relate to Defendant's forum-related activities.  *Impact Prods.*, 341 F. Supp. 2d at 1190.  The aim of the "'purposeful direction' doctrine has been said by the Supreme Court to [be to] ensure that an out-of-state defendant is not bound to appear to account for merely 'random, fortuitous, or attenuated contacts' with the forum state."  *Dudnikov*, 514 F.3d at 1071 (quoting *Burger King*, 471 U.S. at 475).  The defendant must therefore have "deliberately" created some relationship with the forum state that would serve to make that state's potential exercise of jurisdiction foreseeable.  *Burger King*, 471 U.S. at 475-76.  An individual's contract with an out-of-state party cannot, standing alone, establish sufficient minimum contacts with the forum state.  *Id.* at 478.

Plaintiff alleges that the Agreement was entered into in Colorado.  *Compl.* [#1] ¶ 4.  The Agreement also contains a choice-of-law provision indicating that Colorado law will govern disputes between the parties.  *Agreement* [#1-1] at 6; *Burger King*, 471 US at 482 (holding that, although choice-of-law analysis is distinct from minimum contacts analysis, the existence of a provision can be evidence that a defendant purposefully availed himself of the benefits and protections of the laws of the forum state).  Plaintiff further alleges that its "injuries, damages, and losses arose out of [D]efendant's forum-related contacts."  *Compl.* [#1] ¶ 4.  The occurrence of negotiations within the state and the choice-of-law

8

provision indicating that Colorado law governs disputes between the parties indicates that Defendant intended to avail itself of the benefits and protections of Colorado.  Likewise, the alleged contractual breach arose out of a contract governed by Colorado's laws and affecting a Colorado corporation, so the claims before the Court arise from Defendant's activities within the state.   Accordingly, the Court finds that Defendant has minimum contacts with Colorado.

### b.    Traditional Notions of Fair Play and Substantial Justice

Additionally, the Court finds that exercising jurisdiction over Defendant does not "offend traditional notions of fair play and substantial justice." *Impact Prods.*, 341 F. Supp. 2d at 1190.   Regarding "traditional notions of fair play and substantial justice," courts consider:

> (1) the burden on the defendant, (2) the forum state's interests in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effectual relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states [or foreign nations] in furthering fundamental social policies.

*Dudnikov*, 514 F.3d at 1080 (citation omitted).  The Court addresses each of these factors in turn.

First, the Court's exercise of jurisdiction over Defendant would not create an undue burden on Defendant.  "[I]t is only in highly unusual cases that inconvenience will rise to a level of constitutional concern . . . . [I]n this age of instant communication, and modern transportation, the burdens of litigating in a distant forum have lessened." *Peay v. Bellsouth Med. Assistance Plan*, 205 F.3d 1206, 1212-13 (10th Cir. 2000) (citations, quotations, and footnote omitted).  Defendant previously traveled to Colorado to enter into the contract.   *Compl.* [#1] ¶ 4.   Therefore, requiring Defendant to obtain counsel in

Colorado to defend this action in Colorado would not create an undue burden.

Second, "[s]tates have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1096 (10th Cir. 1998). "The state's interest is also implicated where resolution of the dispute requires a general application of the forum state's law." *Id.* Plaintiff is a Colorado corporation with its principal place of business in Colorado. *Compl.* [#1] ¶ 1. The choice of law clause in the Agreement requires application of Colorado law, and resolution of the dispute hinges on Colorado's common law of contracts. *Agreement* [#1-1] at 6; *Compl.* [#1] ¶¶ 10-19. These facts weigh in favor of exercising specific jurisdiction over Defendant in Colorado.

The third factor "hinges on whether the [p]laintiff may receive convenient and effective relief in another forum," *Benton v. Cameco Corp.*, 375 F.3d 1070, 1079 (10th Cir. 2004), and the fourth factor asks "whether the forum state is the most efficient place to litigate the dispute." *Id.* at 1080 (quotations and citation omitted). Plaintiff might be able to receive effective, albeit less convenient, relief in Korea. However, Colorado is the most effective and efficient forum to litigate this dispute because Plaintiff resides in Colorado, the alleged injury occurred in Colorado, and the law to be applied to Plaintiff's claim is Colorado law. Therefore, the third and fourth factors weigh in favor of exercising specific jurisdiction over Defendant in Colorado.

The fifth factor "focuses on whether the exercise of personal jurisdiction by [the forum] affects the substantive social policy interests of other states or foreign nations." *Id.* (quotations and citations omitted). Courts have considered the following in determining whether the exercise of jurisdiction interferes with sovereignty: (1) whether one of the

parties is a citizen of the foreign nation, (2) whether the foreign nation's law governs the dispute, and (3) whether the foreign nation's citizen chose to conduct business with a forum resident. *OMI*, 149 F.3d at 1098. Defendant is a South Korean corporation, and hence a foreign entity. *Compl.* [#1] ¶ 2. On the other hand, the contract was entered into in Colorado and is governed by Colorado law. Because South Korea's interests in interpreting its own law is not at issue and its citizen chose to conduct business in a foreign country, the second and third sovereignty factors also weigh in favor of exercising specific jurisdiction over Defendant in Colorado. Accordingly, the Court finds that exercising jurisdiction over Defendant does not "offend traditional notions of fair play and substantial justice," and the Court may exercise personal jurisdiction over Defendant.

## B.    Default Judgment

In its Motion, Plaintiff seeks default judgment against Defendant in the amount of $162,290.00. *Motion* [#12] at 2. Even after the clerk properly enters default, the Court must decide "'whether the unchallenged facts constitute a legitimate cause of action'" such that a judgment should be entered. *Bixler,* 596 F.3d at 762 (quoting 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 2688, at 63 (3d ed. 1998)). "'There must be a sufficient basis in the pleadings for the judgment entered.'" *Id.* (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). "[A] party is not entitled to a default judgment as of right; rather the entry of a default judgment is entrusted to the 'sound judicial discretion' of the court." *Greenwich Ins. Co. v. Daniel Law Firm*, No. 07-cv-2445-LTB-MJW, 2008 WL 793606, at *2 (D. Colo. Mar. 22, 2008) (quoting *Cablevision of S. Conn., Ltd. P'ship v. Smith*, 141 F. Supp. 2d 277, 281 (D. Conn. 2001)). As discussed above, undisputed facts from the complaint and supporting

11

affidavits are taken as true for purposes of analyzing this motion.  Plaintiff alleges two claims against Defendant; (1) breach of contract and (2) unjust enrichment .[4]

### 1.    Breach of Contract

Pursuant to Colorado law, a party asserting a breach of contract claim must prove the following elements: (1) the existence of a contract; (2) performance by the plaintiff; (3) failure to perform the contract by defendant; and (4) damages to the plaintiff.  *Galvin v. McCarthy*, No. 07-00855-PAB-BNB, 2009 WL 890717, at *6 (D. Colo. Mar. 31, 2009); *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992). Considering the allegations of the Complaint as true, Plaintiffs have alleged sufficient facts to establish a breach of contract.  The Complaint alleges that a contract existed between the parties in the form of the Agreement.  *Compl.* [# 1] ¶ 7; *See generally Agreement* [#1-1].  Plaintiff alleges that it delivered the ski lift conveyor systems specified in the Agreement. *Compl.* [#1] ¶ 7.  Plaintiff maintains that Defendant failed to pay the agreed upon purchase price, which resulted in the damages sought by Plaintiff.  *Id.* at ¶ 11.  Because all elements of a breach of contract claim are sufficiently alleged, the Court **recommends** granting the Motion [#12] to the extent that it seeks default judgment on Plaintiff's breach of contract claim and finding that Plaintiff is entitled to damages consisting of $112,640.00 plus the specified interest.

### 2.    Unjust Enrichment

Pursuant to Colorado law, a party may not recover on the theory of unjust enrichment when an express contract covers the same subject matter.  *Interbank Inv., LLC*

---

[4]  A federal court exercising diversity jurisdiction applies the laws of the forum state in analyzing the underlying claims. See *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Essex Ins. Co. v. Vincent*, 52 F.3d 894, 896 (10th Cir. 1995).

*v. Eagle River Water & Sanitation Dist.*, 77 P.3d 814, 816 (Colo. App. 2003). However, there are two exceptions to this rule: (1) a party may recover on an unjust enrichment claim when the implied-in-law contract covers conduct outside the express contract and (2) a party may recover on an unjust enrichment claim when the party has no right under an enforceable contract. *Id.* (citations and quotations omitted). Here, Plaintiff asserts in the unjust enrichment claim that the same two ski lift conveyor systems at issue were conveyed to Defendant without payment under circumstances which will result in injustice if relief is not granted. *Compl.* [#1] ¶¶ 15-19. The Court finds that this claim is precluded because it covers the same subject matter as the express contract and neither exception discussed above applies. The Court therefore **recommends** that the Motion [#12] be denied to the extent that it seeks default judgment as to Plaintiff's claim of unjust enrichment.

### 3.  Damages

In addition to finding that Plaintiff has a legal basis for relief, default judgment may not be entered until the amount of damages has been ascertained. *See Herzfeld v. Parker,* 100 F.R.D. 770, 773 (D. Colo. 1984). A default judgment for money damages must be supported by proof. *Klapprott v. United States*, 335 U.S. 601, 611-12 (1949). This requirement ensures that a plaintiff is not awarded more in damages than can be supported by the evidence. *See id.*

Pursuant to Fed. R. Civ. P. 54(c), "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Further, "[a]lthough upon default the factual allegations of a complaint relating to liability are taken as true, those allegations relating to the amount of damages suffered ordinarily [are] not." *Dundee Cement Co. v.*

13

*Howard Pipe & Concrete Prods. Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983).   Whether to conduct a hearing for the purpose of ascertaining damages is discretionary; the Court need not conduct a hearing "if the amount claimed is a liquidated sum or one capable of mathematical calculation." *Held v. Shelter Sys. Group Corp.*,16 F.3d 416 at *1 (10th Cir. 1994) (citing *Hunt v. Inter-Globe Energy, Inc.*, 770 F.2d 145, 148 (10th Cir. 1985)) (unpublished decision).   Plaintiff requests entry of default judgment in the following amounts: $157,080.00 in actual damages, $3,200.00 in attorney's fees, and $2,010.00 in costs. *See Motion* [#12] at 2; *Aff. of Attorney Fees*[5] [#12-2] ¶¶ 6-7.

### a.   Actual Damages

As noted above, when entering default judgment, the Court takes all of the well-pleaded facts in a complaint as true.  *See United States v. Craighead*, 176 F. App'x 922, 925 (10th Cir. 2006) (order and judgment).   "If defendant does not contest the amount prayed for in the complaint by failing to answer and the claim is for a sum certain or a sum that can be made certain by computation, the judgment generally will be entered for that amount without any further hearing." *Id.* (quoting 10A Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 2688 (3d ed. 1998) (internal quotations omitted); *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974) ("While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation.")  "It is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix

---

[5] The Affidavit of Attorneys' Fees was executed by James F. Scherer, counsel for Plaintiff.

the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly." 10A C. Wright, A. Miller, & M. Kane, *supra*, § 2688 (quoting *Pope v. United States*, 323 U.S. 1, 12 (1944)).

A federal court sitting in diversity applies state law, not federal law, regarding the issue of prejudgment interest. *Loughridge v. Chiles Power Supply Co.*, 431 F.3d 1268, 1288 (10th Cir. 2005) (citing *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1156 (10th Cir. 2000) (further citation omitted)). Pursuant to Colorado law, parties are allowed to contractually stipulate to interest amounts up to 45%. Colo. Rev. Stat. § 5-12-103.

Awards of post-judgment interest, however, are a matter of federal law, even in diversity actions. *Adams-Arapahoe Joint Sch. Dist. No. 28-J v. Cont'l Ins. Co.*, 891 F.2d 772, 780 (10th Cir. 1989). This is true even in cases where parties have contractually agreed that a particular state's law governs disputes between them. *See In re Rebesell*, 586 F.3d 782, 794 (10th Cir. 2009) (holding that, despite general contractual choice-of-law provision between the parties specifying Colorado law, post-judgment interest rate was governed by 28 U.S.C. § 1961). The Tenth Circuit acknowledges that parties "may contract to, and agree upon, a post-judgment interest at a rate other than that specified in § 1961." *Society of Lloyd's v. Reinhart*, 402 F.3d 982, 1004 (10th Cir. 2005) (citation omitted). However, parties must express such intent through "clear, unambiguous and unequivocal language." *Id.* Generally, contractual provisions specifying general interest rates are insufficient to displace § 1961. *Hosier v. Citigroup Global Mkts., Inc.*, 858 F. Supp. 2d 1206, 1210 (D. Colo. 2012) (citing *Fidelity Fed. Bank, FSB v. Durga Ma Corp.*, 387 F.3d 1021, 1023 (9th Cir. 2004)). The parties must contract around the general rule that "a

cause of action reduced to judgment merges into the judgment and the contractual interest rate therefore disappears for post-judgment purposes." *In re Riebesell*, 586 F.3d at 794 (citation omitted).

Plaintiff requests actual damages in the amount of $112,640.00 and interest in the amount of $44,440.00 as of November 24, 2014, accruing at $55.55 per day thereafter. *Motion* [#12] at 2.   The contract between the parties discusses interest as follows: "Amounts past due are subject to a 1.5% monthly charge (18% per annum) and [Defendant] shall pay [Plaintiff] all costs incurred by it in collecting any past due account from [Plaintiff], including all court costs and attorney's fees." *Agreement* [#1-1] at 2. Plaintiff states that interest is calculated from September 15, 2013, as specified in the contract. *Aff. of Jennifer Kelly* [#12-1] ¶ 6.   However, the Court's calculations reveal an inconsistency between the stated interest rate in the parties' contract and the amount claimed in this action.   The Court agrees, as Plaintiff asserts, that interest has accrued at a rate of $55.55 per day as specified in the Agreement. *Id.*   Using that figure, the 435-day period between September 25, 2013 and November 24, 2014 would yield only $24,164.25. Plaintiff may have erroneously calculated from the date of September 25, 2012 (800 days before November 24, 2014), which yields the claimed amount of $44,440.00.   However, this date is not alleged to have been the starting point of interest calculations, and could not be. The parties entered the Agreement on May 15, 2013 and the alleged breach did not occur for another four months thereafter.   Plaintiff is therefore entitled to interest totaling $24,164.25 as of November 24, 2014.

Although the Agreement specifies a general interest rate, it makes no particular mention of post-judgment interest. *See Agreement* [#1-1] at 2.   Because the parties did not

16

include "clear, unambiguous and unequivocal language" expressing the intent to "override the general rule on merger," the federal post-judgment rate set by § 1961 shall apply. *See in re Riebesell*, 586 F.3d at 794-795 (holding that a general contractual provision specifying that "interest shall accrue until payment at the rate of twenty-four percent (24%) per annum" was insufficient to displace the federal rate under § 1961).

The Court therefore **recommends** that Plaintiff be awarded $136,804.25, plus additional prejudgment interest from November 24, 2014 to the date of judgment at a rate of $55.55 per day, and post-judgment interest pursuant to 28 U.S.C. § 1961.

### b.    Attorneys' Fees and Costs

In addition to actual damages, Plaintiff seeks $3,200.00 in attorneys' fees and $2,010.00 in costs. *Aff. of Attorney Fees* [#12-2] ¶¶ 6-7.

As a general rule in diversity cases, if "state law does not run counter to a valid federal statute or rule of court, and usually it will not, state law denying the right to attorneys' fees or giving a right thereto, which reflects a substantial policy of the state, should be followed." *Home Loan Inv. Co. v. St. Paul Mercury Ins. Co.*, No. 12-cv-02308-CMA-CBS, 2014 WL 6723965, at *3 (D. Colo. Nov. 25, 2014) (*quoting Garcia v. Wal-Mart Stores, Inc.*, 209 F.3d 1170, 1177 (10th Cir. 2000)). When a party exercises its contractual rights to specify a particular choice of law, attorney fee-shifting becomes substantive, not procedural. *Boyd Rosene & Assocs., Inc. v. Kan. Mun. Gas Agency*, 174 F.3d 1115, 1126-27 (10th Cir. 1999). Colorado follows the traditional "American rule" that, absent statutory authority, an express contractual provision, or a court rule, the parties in a lawsuit are required to bear the costs of their own legal expenses. *Moore v. Edwards*, 111 P.3d 572,

573 (Colo. App. 2005).  As noted, express fee-shifting provisions are an exception to the otherwise applicable rule.  *Gattis v. McNutt*, 318 P.3d 549, 558 (Colo. App. 2013).

The Agreement between the parties contains two fee-shifting clauses.  *Agreement* [#1-1] at 2, 6.  The payment schedule states that "[Defendant] shall pay [Plaintiff] all costs incurred in collecting past due account from [Defendant], including all court costs and attorney's fees." *Id.* at 2.  A more general provision states:

> If any party hereto shall bring any suit or action against the other for relief, declaratory or otherwise, arising out of this Agreement, the prevailing party shall have and recover against the other party, in addition to all court costs and disbursements, such sum as the Courts may adjudge to be responsible attorney's fees.[6]

*Id.* at 6.

To determine reasonable attorneys' fees, courts first calculate a "lodestar" amount. *Payan v. Nash Finch Co.*, 310 P.3d 212, 217 (Colo. App. 2012).  The lodestar amount represents the number of hours reasonably expended on the case, multiplied by a reasonable hourly rate.  *Id.*  The party seeking an award of fees should submit specific evidence supporting the hours worked and rates claimed.  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  D.C.COLO.LCivR 54.3(a) requires that any motion for attorneys' fees shall be supported by an affidavit.  For each person whom fees are claimed, the rule additionally requires: (1) a summary of relevant qualifications and experience; and (2) a detailed description of the services rendered, the amount of time spent, the hourly rate

---

[6]  Plaintiff offers no interpretation of the phrase "responsible attorney's fees."  Precedent amply demonstrates that contracts generally refer to "reasonable" attorneys' fees, and the law requires determination of reasonable attorneys' fees. *See Blum*, 465 U.S. at 893; *Payan*, 310 P.3d at 217.  Hence, the Court examines whether the claimed fees are reasonable as a matter of law.

charged, and the total amount claimed.  D.C.COLO.LCivR 54.3(b).

### i.    Hourly Rate

The reasonable hourly rate is calculated by examining the prevailing market rates of the relevant community.  *Blum v. Stenson*, 465 U.S. 886, 895 (1984).  Plaintiff must produce "satisfactory evidence, in addition to the attorneys' own affidavits, that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  *Id.* at 895 n.11.

Plaintiff requests attorneys' fees calculated at the rate of $325 an hour for James F. Scherer.  *Aff. of Attorney Fees* [#12-1] ¶ 3.  Plaintiff states that Mr. Scherer has been licensed since 1984.  *Id.* at ¶ 2.  Plaintiff further states that, in addition to the United States District Court for the District of Colorado, Mr. Scherer is admitted to practice in the Colorado Supreme Court, the Tenth Circuit Court of Appeals, the Ninth Circuit Court of Appeals, and the U.S. Supreme Court.  *Id.*  In light of his background and 31 years of experience, Mr. Scherer's hourly rate of $325 an hour is reasonable.  *See Shrader v. Beann*, No. 10-cv-01881-REB-MLW, 2012 WL 527480, at *3 (D. Colo. Feb. 12, 2012) (finding that an hourly rate of $425 for senior attorneys in the Denver area is reasonable); *Broker's Choice of Am., Inc. v. NBC Universal, Inc.*, No. 09-cv-00717-CMA-BNB, 2011 WL 3568165, at *8-9 (D. Colo. Aug. 15, 2011) (same).

Plaintiff also requests fees for paralegal time at a rate of $95 per hour.  *Aff. of Attorney Fees* [#12-1] at ¶¶ 4-5 (requesting a total amount of $47.50 for .5 hours of work). D.C.COLO.LCivR 54.3 requires that "a motion for attorney fees shall be supported by [an] affidavit" and the "motion shall include the following for each person for whom fees are claimed: (1) a summary of relevant qualifications and experience . . . ."  Plaintiff has not

19

provided any evidence of qualifications for the paralegal listed only as "AAR." *See generally Pl.'s Billing Summ.* [#12-3]. Some jurisdictions will award fees for work performed at the prevailing rate in the local community even in the absence of the provision of specific biographical information about a paralegal. *See, e.g.*, *Pilitz v. Incorporated Village of Freeport*, No. CV 07-4078(ETB), 2011 WL 5825138, at *5 (E.D.N.Y. Nov. 17, 2011) ("Where, as here, the moving party fails to provide any biographical information to support the reasonableness of the rates, the court may use its discretion to award fees at a lower rate than requested." (quotation marks and citation omitted)); *Livingston v. Cavalry Portfolio Servs., LLC*, No. 1:09-CV-384, 2009 WL 4724268, at *7 (N.D. Ohio Dec. 2, 2009) (awarding paralegal fees at the rate of $113 per hour even though "Mr. Livingston ha[d] not attached biographies or affidavits of either paralegal . . . ."). However, the Court's Local Rules mandate that this information be provided to the Court before it may award any such fees. Therefore, to the extent the Motion seeks an award of work performed by a paralegal, the Court **recommends** that such request be denied. *But see Reichers v. Delaware Asset Mgmt, LLC*, No. 13-cv-02171-CMA-CBS, 2013 WL 6096136, at *4 (D. Colo. Nov. 20, 2013) ("Although the paralegal who worked on this case has been certified as a paralegal for ten years, her affidavit contains no information about her actual experience working in this field. Therefore, the Court finds that $75.00 per hour is a reasonable rate") (citations omitted)).

### ii.     Number of Hours

It is counsel's burden to prove and establish the reasonableness of each dollar, and each hour, above zero. *Mares v. Credit Bureau*, 801 F.2d 1197, 1210 (10th Cir. 1986).

Further, "[c]ounsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, . . . [h]ours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Hensley,* 461 U.S. at 434.  In reaching a determination the Court "need not, and indeed should not, become green-eyeshade accountants.  The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection.  So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Fox v. Vice*, 563 U.S. ---, 131 S. Ct. 2205, 2216 (2011).

Plaintiff has requested fees for 9.7 hours of Mr. Scherer's work. *Pl.'s Billing Summ.* [#12-3] at 1.  Tasks are sufficiently divided to show the amount of work completed and that Mr. Scherer did not engage in tasks that would be better designated as administrative work. Therefore, the request for compensation for 9.7 hours of Mr. Scherer's work is reasonable.

### iii.    Lodestar Amount

Based on the aforementioned conclusions, the lodestar figure for Plaintiff's fee request is $3,125.50 (9.7 hours multiplied by a $325.00 hourly rate).  This fee award is reasonable given the issues presented in this case and it is also adequate to attract competent counsel to similar cases without producing a windfall for attorneys. *Scadden v. Weinberg, Stein & Assocs., LLC*, No. 12-cv-02454-PAB-MEH, 2013 WL 1751294, at *7 (D. Colo. Apr. 23, 2013) (citing *Blum*, 465 U.S. at 893-94). The Court therefore **recommends** that Plaintiff be awarded attorneys' fees in the amount of $3,125.50.

### iv.    Costs

Plaintiff also seeks $2,010.00 in costs: $400.00 for the filing fee for this case and $1,610.00 for translation services.  *Motion* [#12] at 2; *Pl.'s Cost Summary* [#12-4] at 1.  The contract between the parties indicates that the prevailing party in litigation shall recover "all court costs and disbursements."   *Agreement* [#1-1] at 6.   Pursuant to the Hague Convention, translation services may be required by the Central Authority to effect service. 20 U.S.T. 362, T.I.A.S. 6638, Art. 5.   South Korea is one such nation.   *See Am. River Transp.*, 2004 WL 764181, at *3 (Ordering that because service was not waived, plaintiff was required to follow the terms of the Hague Convention, including translation into Korean).   Although plaintiff has not supported the cost of translation services beyond a raw number given in its Cost Summary [#12-4], other courts have found similar costs appropriate.  *See, e.g.*, *Law Office G.A. Lambert & Assocs. v. Davidoff*, No. 13-1734 (CKK), 2014 WL 5465182, at *7 (D.D.C. Oct. 30, 2014) (Ruling that $875 fee for translation into German is "modest" and taxable pursuant to Fed. R. Civ. P. 54(d)).   Also, the parties' Agreement requires that the losing party cover *all* court costs, not *reasonable* court costs. *Agreement* [#1-1] at 2.  The Court therefore **recommends** that Plaintiff be awarded costs in the amount of $2,010.00.

### III.  Conclusion

For the foregoing reasons, it is respectfully **RECOMMENDED** that the Motion [#12] be **GRANTED in part** and **DENIED in part.**  The Court **recommends** that the Motion [#12] be **granted** to the extent that **default judgment** should enter in favor of Plaintiff and against Defendant for the breach of contract claim in the amount of $141,939.75, consisting

of (1) $112,640 in actual damages; (2) $24,164.25 in compensatory damages for prejudgment interest as of November 24, 2014; (3) $3,125.50 for reasonable attorneys' fees; and (4) $2,010.00 in costs.  The Court also **recommends** that additional prejudgment interest accrue from November 24, 2014 to the date of judgment at a rate of $55.55 per day, and that post-judgment interest accrue in accordance with 28 U.S.C. § 1961.  The Court **recommends** that the Motion be **denied** as to all other requested relief.

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).   A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  June 8, 2015

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge